UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

RAYMOND CLYDE,

                    Petitioner,

           vs.

J. BELLNIER, Superintendent, Upstate
Correctional Facility,

                    Respondent.

No. 9:08-cv-00909-JKS

MEMORANDUM DECISION

Petitioner, Raymond Clyde, a state prisoner proceeding *pro se*, has filed a petition for

habeas corpus relief under 28 U.S.C. § 2254.  Clyde is currently in the custody of the New York

Department of Correctional Services, incarcerated at the Upstate Correctional Facility.

Respondent has answered, and Clyde has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS/JURISDICTION

**A.  Background/Prior Proceedings**.

Clyde is currently incarcerated at the Upstate Correctional Facility in accordance with a

1996 conviction of various sexual crimes for which he was sentenced to four consecutive

indeterminate prison terms of 12½ to 25 years, concurrent with five concurrent indeterminate

terms of 12½ to 25 years.  Clyde's conviction and sentence, which were upheld on appeal,[1] are

not challenged in this proceeding.  While incarcerated at the Attica Correctional Facility, Clyde

_____

[1] *People v. Clyde*, 678 N.Y.S.2d 493 (App. Div.), *lv. denied*, 707 N.E.2d 450 (N.Y. 1998)
(Table).

was convicted in a prison disciplinary proceeding involving two misbehavior reports resulting

from incidents that occurred while he was incarcerated at the Auburn Correctional Facility.

Under the first misbehavior report, Clyde was convicted of several rules violations:[2]  assaulting

staff (Rule 100.11), attempting to commit a sexual act (Rule 101.10), violent conduct (Rule

104.11), physical interference (Rule 107.10), being out of place (Rule 109.10), leaving an

assigned area (Rule 109.11), making threats (Rule 102.10), possessing a weapon (Rule 113.10)

and possessing unauthorized items (Rule 113.23).  On the second misbehavior report, Clyde was

convicted of assaulting staff (Rule 100.11) and being out of place (Rule 109.10).  The hearing

officer imposed a penalty of 12 years in the Special Housing Unit ("SHU"), with a corresponding

loss of recreation, packages, commissary and phone privileges, and recommended a 12-year loss

of good time credits.[3]  The decision of the hearing officer was upheld in all respects on

administrative appeal.[4]  Clyde sought relief in the Supreme Court, Wyoming County, under N.Y.

Civil Procedure Law and Rules Article 78.  The Wyoming County Supreme Court transferred the

matter to the Appellate Division, Fourth Department,[5] which summarily denied Clyde's Article

78 petition without opinion or citation to authority on March 14, 2008.[6]  Clyde did not seek leave

to appeal from the New York Court of Appeals.  Clyde timely filed his petition for relief in this

Court on August 22, 2008.

---

[2] Rule numbers are as identified in 7 N.Y. Comp. Codes R. & Regs, § 272.2[B].

[3] Docket No. 11-13, p. 2.

[4] Docket No. 11-4, p.2.

[5] Docket No. 11-8, p.2.

[6] *Clyde v. Fischer*, 853 N.Y.S.2d 519 (App. Div. 2008) (Table).

**B. Jurisdiction**.

Although neither party has raised the issue of jurisdiction, this Court must nonetheless determine its jurisdiction and the extent to which it may grant relief.[7]  As the Supreme Court has observed, challenges to the validity of confinement or to particulars affecting its duration are the province of habeas corpus, while requests for relief turning on the circumstances of confinement are properly part of a civil rights action under 42 U.S.C. § 1983.[8]  In this case, to the extent that Clyde is serving his sentence in SHU, it is a condition of his imprisonment, not affecting either the validity of his conviction or the duration of his imprisonment.  On the other hand, the loss of 12 years of good time credit does result in the denial of his release short of the maximum term of his confinement.  Thus, to that extent, Clyde is seeking relief that is appropriate under § 2254.[9]  Therefore, this Court has jurisdiction to entertain the petition under § 2254, but may be constrained in the relief it may grant.[10]

## II.  GROUNDS RAISED/DEFENSES

Clyde raises two grounds:  (1) that he was deprived of a fundamental right to prepare a defense (ineffective assistance of an employee assistant); and (2) insufficiency of the evidence to support a finding of guilt as to five of the eleven violations of which he was convicted.  Respondent contends that Clyde has failed to exhaust his state court remedies and is procedurally

---

[7] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990).

[8] *See Muhammad v. Close*, 540 U.S. 749, 750-51 (2004); *McCarthy v. Bronson*, 500 U.S. 136, 141-42 (1991).

[9] *See Presier v. Rodriguez*, 411 U.S. 475, 500 (1973).

[10] *See Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974); *see also* 28 U.S.C. § 2243 ("the court shall . . . dispose of the matter as law and justice require.").

barred from raising the grounds in a federal habeas petition.  Respondent has raised no other

affirmative defense.[11]

### III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of

review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" at the time the state court rendered its

decision or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[12]  The Supreme Court has explained that "clearly

established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the

Supreme Court] as of the time of the relevant state-court decision."[13]  The holding must also be

binding upon the states; that is, the decision must be based upon constitutional grounds, not on

the supervisory power of the Supreme Court over federal courts.[14]  Thus, where holdings of the

Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that

the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[15]  When a claim falls

under the "unreasonable application" prong, a state court's application of Supreme Court

---

[11] *See* Rules—Section 2254 Cases, Rule 5(b).

[12] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[13] *Williams*, 529 U.S. at 412.

[14] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[15] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

precedent must be objectively unreasonable, not just incorrect or erroneous.[16]  The Supreme

Court has made clear that the objectively unreasonable standard is a substantially higher

threshold than simply believing the state court determination was incorrect.[17]  In a federal habeas

proceeding, the standard under which this Court must assess the prejudicial impact of

constitutional error in a state-court criminal trial is whether the error had a substantial and

injurious effect or influence in determining the jury's verdict.[18]  Petitioner "bears the burden of

proving by a preponderance of the evidence that his constitutional rights have been violated."[19]

 In applying this standard, this Court reviews the last reasoned decision by the state

court.[20]  In addition, the state court's findings of fact are presumed to be correct unless the

petitioner rebuts this presumption by clear and convincing evidence.[21]  If a federal claim has not

been adjudicated on the merits, AEDPA deference is not required.[22]  In that situation, conclusions

of law and mixed questions of fact and conclusions of law are reviewed *de novo*.[23]  Where there

is no reasoned decision of the state court addressing the ground or grounds raised on the merits

---

[16] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[17] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[18] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[19] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[20] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[21] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[22] *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[23] *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[24]  In so doing, because it is not clear that it did not so do, the Court assumes that the state court decided the claim on the merits and the decision rested on federal grounds.[25]  This Court gives the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[26]

IV.  DISCUSSION

**A.  Exhaustion/Procedural Bar**.

Respondent contends that Clyde is procedurally barred from litigating this claim on the merits in federal habeas proceedings.  This Court agrees.  "A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."[27]  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.[28]  Clyde failed to seek leave to appeal from the New York Court of Appeals; thus, his claims are unexhausted.

---

[24] *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[25] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris–Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[26] *Jimenez*, 458 F.3d at 145-46.

[27] *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[28] *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

 Consequently, Clyde's forfeiture in the state courts bars him from litigating that claim in this Court in these proceedings.[29]  To avoid this bar, a petitioner must demonstrate cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.[30]  To prove a fundamental miscarriage of justice, Clyde must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[31]

Clyde makes two arguments to avoid the procedural default bar.  First, Clyde argues that since he exhausted his administrative remedies, in his opinion, he has satisfied the exhaustion requirement.  While exhaustion of *administrative remedies* is a prerequisite to bringing a civil rights action under 42 U.S.C. § 1983, § 2254(b)(1) requires exhaustion of "remedies available in the *courts of the state*."  (Emphasis added.)  Second, Clyde argues that at the time he received notice of denial of his Article 78 petition he had only two weeks to file his application for leave to  appeal.  Clyde contends this was insufficient time.  This conclusory statement, which is unsupported by a factual basis, does not establish cause.  Nor, as discussed further in subpart B, below, can Clyde show a fundamental miscarriage of justice.

---

[29] *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991).

[30] *See Coleman*, 501 U.S. at 750.

[31] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

**B. Miscarriage of Justice**.

Initially, this Court must determine whether the challenged discipline imposed implicates a liberty interest cognizable under the Fourteenth Amendment.[32]  A state prisoner's liberty interest is implicated only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[33]  This Court must look at the actual punishment to make this determination.

> Factors relevant to determining whether the plaintiff endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement."[34]

In this case, Clyde was sentenced to confinement in SHU for 12 years.  Clyde's liberty interest was unquestionably infringed.[35]  Also, because the disciplinary action affected his good-time credits, Clyde has a cognizable due process claim.[36]

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due a defendant in such a proceeding does not apply.[37]  In the context of prison disciplinary proceedings the minimum requirements of due process are: (1) advance written notice of the charges brought against the inmate; (2) the right to call witnesses and present

---

[32] *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

[33] *Sandlin v. Connor*, 515 U.S. 472, 484 (1995).

[34] *Palmer*, 364 F.3d at 64 (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)).

[35] *See Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (prisoner stated a due process claim when confined for a 514-day period); *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000) (finding that a prisoner's liberty interest was infringed by a 305-day confinement).

[36] *Wolff*, 418 U.S. at 556-57.

[37] *Id.* at 556.

documentary evidence in his defense; (3) a written statement of the factfinder of the evidence relied on and the reasons for the disciplinary action taken,[38] and (4) the findings must be supported by some evidence in the record.[39]  Inmates do not, however, have a right to confront and cross-examine witnesses.[40]  Nor do inmates have a right to the assistance of counsel.[41]  Illiterate inmates may, however, have the right to the assistance of a staff member or a sufficiently competent inmate.[42]

Under the rules and regulations promulgated by the Department of Correctional Services ("DOCS"), an inmate charged with a rules violation must receive the written misbehavior report at least 24 hours before the hearing.[43]  An inmate also has the right to present documentary evidence,[44] to be present at the hearing,[45] and to call witnesses.[46]  The hearing officer must provide the inmate with a written statement of the disposition setting forth the evidence relied upon and the reasons for any penalties imposed.[47]  Thus, the procedures utilized by DOCS in this case at least facially comply with minimum due process requirements.[48]

---

[38] *Id*. at 556-66.

[39] *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

[40] *Wolff*, 418 U.S. at 567.

[41] *Id.* at 570.

[42] *Id.*

[43] 7 N.Y. Comp. Codes R. & Regs, § 253.6(a).

[44] 7 N.Y. Comp. Codes R. & Regs, § 253.6(b).

[45] 7 N.Y. Comp. Codes R. & Regs, § 253.6(c).

[46] 7 N.Y. Comp. Codes R. & Regs, § 253.5(a).

[47] 7 N.Y. Comp. Codes R. & Regs, § 253.7(a)(5).

[48] *See Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004).

Because there was no reasoned decision addressing the grounds raised by Clyde in his petition, this Court must assume that the state court decided the claim on the merits and the decision rested on federal grounds.[49]  This Court also gives the assumed decision the same deference as it would give a reasoned decision of the state court.[50]

Ground 1:  Ineffective Assistance.

Although Clyde was assigned staff assistance under New York procedures, he contends that the assistance rendered was insufficient and the insufficiency of the assistance made it impossible to defend himself.  Specifically, Clyde alleges that although he provided the staff assistant with a list of documents Clyde required for his defense,[51] the assistant did not provide them to Clyde prior to the disciplinary hearing.  When the disciplinary hearing was initially convened, Clyde raised the fact that he had not received the requested documents.  The hearing officer provided Clyde with 22 documents; however, Clyde contends they were incomplete because the requested injury reports and photos of the staff members were not included.  The hearing officer continued the hearing to provide Clyde time review the documents.  When the disciplinary hearing was reconvened, Clyde requested additional documents and that witnesses be interviewed by the staff assistant.[52]  Clyde further alleges that during a search of his cell in the

---

[49] *See Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740.

[50] *Jimenez*, 458 F.3d at 140, 145-46.

[51] This list included:  (1) paperwork pertaining to the incidents; (2) Copy of title 7, chapter 5; (3) unusual incident reports; (3) photographs pertaining to the incident; (4) to/from forms pertaining to the incident; (5) statements made by staff/inmates pertaining to the incident (written or audio recorded); (6) chain of evidence log; (7) use of force forms; and (8) injury reports pertaining to staff.  Docket No. 11-5, p. 19.

[52] Clyde requested (1) that Capt. Rourke and C.O. Alberry be interviewed as to their parts
(continued...)

interval between the time he was provided the documents and the continued hearing, correction officers removed documents from his cell, including one of the incident reports.  Clyde also contends that he was not provided with some of the documents contained in the hearing officer's packet until just before the witness testified, thereby precluding Clyde from presenting an adequate defense.

As the Supreme Court noted in *Wolff*, while an illiterate inmate might be entitled to assistance, because the inmate in that case was not shown to be illiterate, it did not need to reach the issue.  Here, as in *Wolff*, Clyde has not shown he is illiterate.  Indeed, his *pro se* filings in this Court clearly indicate that Clyde is far from illiterate.  Consequently, *Wolff* has no direct application to this case.  The Second Circuit has, however, held in a civil rights action brought under 42 U.S.C. § 1983 that assistance is required where, as here, an inmate is "disabled by confinement in SHU or transferred to another facility, the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment."[53]  The assistance

---

[52](...continued)
in the investigation and actions, and (2) copies of inventory list of property taken from Clyde's cell on the date of the incident and a to/from statement by Mr. G. Schramm.  Docket No. 11-5, p. 21.

[53] *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988).  This Court is not unmindful of the fact that *Eng* and its progeny discussed herein all involve civil rights cases brought under 42 U.S.C. § 1983, not habeas proceedings under § 2254.  This renders their application to this case questionable.  Under both § 1983 and § 2254, the constitutional right claimed must be clearly established.  Under § 2254, however, in federal habeas proceedings the constitutional right must have been clearly established by the Supreme Court.  Thus, unlike civil rights cases under § 1983, in a federal habeas proceeding under § 2254, circuit precedent cannot provide clearly established federal law.  *Musladin,* 549 U.S. at 76-77; *see Rodriguez v. Miller*, 537 F.3d 102, 109 (2d Cir. 2008) (holding that notwithstanding that the Second Circuit had in the past, as did its sister-circuits, used its own precedent to interpret and flesh out Supreme Court decisions to decide petitions that came before it, it can no longer do so).  This Court, in applying these cases

(continued...)

"must be provided in good faith and in the best interests of the inmate."[54]  Where an inmate is

disabled—segregated from the general prison population or transferred to another facility—an

assistant should perform the investigatory tasks that the inmate, were he able, could do for

himself.  That is, gathering evidence, obtaining relevant documents and recordings, and

interviewing witnesses.[55]  The assistant does not, however, have a constitutional duty to act

beyond the bounds of the inmate's specific instructions because, if he were to do so, he would be

acting as counsel, to which, under *Wolff*, the inmate is not entitled.[56]  The right to an assistant is

also subject to a harmless error analysis.[57]

Clyde also contends that because his designated assistant did nothing, even failing to

report the results of his investigation, he received inadequate assistance requiring that the writ be

granted.  There are two flaws in Clyde's position.  First, Clyde acknowledges that he did, in fact,

receive the requested documents from the hearing officer and the hearing was continued to

permit Clyde the opportunity to review those documents in order to prepare his defense.  Second,

Clyde does not contend nor is there any indication in the record that the failure of the designated

assistant to perform was done in bad faith.[58]  Thus, this Court cannot say that the failure of the

---

[53](...continued)
to this proceeding, is doing so solely in the context of establishing whether there was a
fundamental miscarriage of justice sufficient to overcome the procedural bar.

[54] *Eng*, 858 F.2d at 898.

[55] *Id*.

[56] *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).

[57] *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009).

[58] *See Silva* (noting that a constitutional argument required a showing that the assistant
withheld the information purposefully or acted in bad faith).

designated assistant to adequately perform in this case deprived Clyde of a constitutional right to assistance, *per se.*

The record indicates that, at the time the disciplinary hearing was initially scheduled to start on July 14, Clyde raised the issue that he had not been furnished the documents requested in the first request he provided to the designated assistant.[59]  The hearing officer then provided Clyde with the copies of the documents received from the Auburn Correctional Facility.[60]  The record also reflects that the documents provided were all those documents that existed, except for certain documents that the hearing officer reserved.[61]  The hearing officer observed that, in his opinion, assistance had been completed in a satisfactory manner and asked if Clyde agreed. Clyde did not immediately respond, either affirmatively or negatively.[62]  The record further reflects that immediately after providing Clyde the documents, the hearing officer proceeded to read the charges and took Clyde's not guilty plea.[63]  After reading the charges, the hearing officer asked Clyde if he had any further objections at that time.  Clyde responded:  "Not at this time.  I would just like the opportunity to go over all of the paper work you had just given me."[64]  The hearing officer adjourned the hearing and it recommenced July 24.[65]

---

[59] The record also shows that some of the items requested by Clyde were delivered to him on July 13, but Clyde refused to sign for them.  Docket No. 11-5, p. 17.

[60] Docket No. 11-15, p. 8.

[61] Docket No. 11-15, pp.8, 15.

[62] Docket No. 11-15, p. 9.

[63] Docket No. 11-15, pp. 9-12.

[64] Docket No. 11-15, p. 12.

[65] Docket No. 11-15, p.13.

Other than his conclusory statement, Clyde does not explain how the failure of the designated assistant to provide the documents made it impossible for him to present a defense. His argument appears to be that simply because the hearing officer substituted himself as the assistant by providing Clyde the requested documents he was *per se* denied effective assistance. This case is distinguishable from the case relied upon by Clyde, *Ayers v. Ryan*.[66]  In *Ayers*, the Second Circuit held: (1) an inmate's due process rights were violated when the hearing officer undertook acting as the inmate's assistant and then did nothing; and (2) in agreeing to have the hearing officer act as the assistant, the inmate did not waive the right to pre-hearing assistance.[67] Neither of these holdings is implicated in this case.  Clyde got the documents that he requested, at least to the extent that the record shows those documents existed and were not confidential. Having been granted a continuance, Clyde was given sufficient opportunity to review the documents and prepare a defense.[68]

Clyde's reliance on the decision of the Southern District of New York in *Lee v. Coughlin*[69] is likewise misplaced.  In *Lee*, the court rejected the argument that the hearing officer could fulfill the dual roles of an assistant whose role is to assist in preparing a defense and an impartial hearing officer after the hearing commenced.[70]  In providing the requested documents, the hearing officer was acting impartially.  To the extent that the hearing officer withheld

---

[66] 152 F.3d 77 (2d Cir. 1998).

[67] *Id.* at 81.

[68] The allegation that some of the documents were subsequently taken as a result of the search of his cell does not bear upon the adequacy of his pretrial assistance.

[69] 902 F.Supp. 424 (S.D.N.Y. 1995).

[70] *Id.* at 433.

14

documents, he was acting in his capacity as the hearing officer, and Clyde has not presented any argument that he was entitled to those documents.  Because he was furnished with the requested documents by the hearing officer, Clyde has failed to show that the failure of the designated assistant to provide him with them in any way hindered his ability to present a defense.

In his second request, Clyde requested that he be provided a "to/from" memo authored by C.O. Schamm and that two individuals be interviewed:  Capt. Rourke and C.O Alberry.  Capt. Rourke testified at the hearing and Clyde did not call C.O. Alberry as a witness.[71]  Therefore, Clyde can show no prejudice as a result of the failure to interview Capt. Rourke, and, by failing to call C.O. Alberry as a witness, Clyde has waived any right he had to call Alberry as a witness.[72]  Thus, the failure of the assistant to interview those witnesses was harmless.[73]  As to the inventory list of the items taken from Clyde's cell, the hearing officer did not see any relevance of the inventory list to the charges before him, and Clyde does not dispute that ruling.  Nor can this Court discern from the record what relevance that inventory had to the charges which were the subject of the disciplinary proceeding.  Schamm also testified at the hearing.[74]  Thus, the failure to provide Schamm's to/from, if it existed, was likewise harmless.

This Court cannot say on the record before it that, to the extent that the designated assistant rendered inadequate assistance, it resulted in a fundamental miscarriage of justice.

---

[71] Docket No. 11-15, pp. 23-27 (testimony of Capt. Rourke).  Docket No. 11-15, pp. 17-19 (witnesses identified by Clyde).

[72] *See Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996).

[73] It is also noted that nowhere in the documents submitted by Clyde does Clyde indicate what evidence Alberry might have had or testimony he might have given that was relevant to the proceedings.

[74] Docket No. 11-15, pp. 43-54.

Moreover, even assuming that *Eng* and its progeny applied to federal habeas proceedings, this Court cannot say that the denial of Clyde's Article 78 petition by the Appellate Division "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[75]  Therefore, even if this Court were to reach the merits of Clyde's first ground, he would not be entitled to relief.

Ground 2:  Insufficiency of the Evidence.

Clyde contends that several, but not all, of the charges he was convicted of were not supported by the evidence.  Specifically, Clyde identifies the following charges as being unsupported by the evidence:  attempting to commit a sexual act (Rule 101.10); being out of place (Rule 109.10) (two counts); leaving an assigned area (Rule 109.11); possessing a weapon (Rule 113.10); and possessing unauthorized items (Rule 113.23).  Clyde also contends that the disposition is devoid of any statement of reasons; however, that contention is belied by the record.  Clyde does not challenge the findings on the remaining charges: assaulting staff (Rule 100.11) (two counts), violent conduct (Rule 104.11), physical interference (Rule 107.10), and making threats (Rule 102.10).

The hearing officer's findings, as stated on the record, were based upon the following evidence:

> I have reached a disposition I filled out a 2176 form regarding request for witnesses CO Brown, Bane, Captain Rourke, CO Jones, Ms. Schramm, Lt. Vasquez, A. Rebich. Sergeant Cero, CO Diego, V. Westervelt, Nurse Lennox, I

_____

[75] 28 U.S.C. § 2254(d).

wrote here each of these witnesses testified via speaker phone due to this incident originating in Auburn CF and the hearing being held at Attica C.F making actual presence at the hearing of witnesses impossible.  Assignments noted your--- today [*sic*] date 8/21/06 is the date received, I am going to give you the yellow portion of that 2176 I am handing that through to Mr. Clyde I am going to read the disposition sheet, I am going to read the disposition.  Under the charge of violent conduct, assault on staff, weapon, contraband interference with employee, threats. sex offense, out of place, leaving assigned area. assault on staff out of place, I found you guilty, I found you not guilty to stalking and weapon[.]  The evidence relied upon in and the misbehavior report written by A. Rebich, Lt. Vasquez, the testimony of V. Westervelt, A. Rebich, Ms. Schramm, CO Brown, CO Diego, CO Jones, Captian [*sic*] Rourke, Sergeant Cero, and Nurse Lennox at the hearing and the photos you requested and viewed at the hearing of yourself the two from memo of R.N. Lennox use of force report, medical records and photos of V. Westervelt, confidential you were allowed to review them at hearing according to Lt. Vasquez, on 7/7/06 at approximately 12:30 p.m. Ms. Westervelt was proceeding from the storehouse to the kitchen via the storehouse corridor she was assaulted by an inmate later identified as Clyde, Raymond 96·A·2453, Clyde grabbed Ms. Westervelt from behind and attempted to stuff a towel down her throat, Ms. Westervelt stated that she bit her assaults hand Clyde tried to tie Ms.Westervelts [*sic*] hands behind her back and punched her in the face he pulled her hair wrenching her hair backwards and threatened to kill her if she didn't shut up, Clyde throw Ms. Westervelt to the floor shoving her down on her stomach he continue to try and tie her hands, Ms. Westervelt managed to scream A. Rebich, principal stores clerk was in the store house and heard the commotion Mr. Rebich immedialtey responded as Mr. Rebich entered the corridor he saw Clyde sitting on Ms. Westervelt back trying to tie her hands with strips of white cloth Mr. Rebich yelled and Clyde post to cease his attack on Ms. Westervelt he then tried to run from the area.  According to the report of A. Rebich on 7/7/06 at approximate 12:30 p.m. when I went to the investigate when I went to the door to the hallway I observed V. Westervelt lying on her stomach with an inmate wearing messhall whites sitting on the small of her back trying to tie her hands behind her back I heard a yell plesae [*sic*] don't do this to me at this time I activated my cordless phone and yell hey and started running down the hallway towards the inmate when V. Westervelt I yelled hey observed the inmate get off Ms. Westervelt and start running up the hallway towards me as we meet in the hallway I stuck my left leg out to trip him and hit him in the back and through force into the ground and then I turned to face him he came back at me and punched me in the head above my right eye knocking me to the ground and then started to run back up the hallway towards the storehouse, and continued on additional sheet it goes on to the next page the second part. Continued from previous page rule 100.11 of inmate behavior it states an inmate shall not assault or inflict or attempt to inflict bodily harm upon any staff member I find you violated this rule by punching V. Westervelt tying her hands up and stuffing a towel in her mouth pulling her hair

and pulling her to the floor and by punching A. Rebich in the face knocking him to the ground, rule 102.10 states an inmate shall not under any circumstances make any threats, spoken, or in writing, or by gesture I find you violated this rule by stating to kill V. Westervelt if she didn't shut up, rule 101.10 of the standards of inmate behavior states an inmate shall not engage and or encourage solicit or attempt to force another to engage in any sexual act I find you violated this rule by grabbing Ms. Westervelt from behind stuffing a towel in her mouth trying to tie her up hands behind back punching her and stating you would kill her if she didn't shut up which is an attempt to force another to engage in sexual acts. [76]

The findings of the disciplinary hearing officer must be supported by some evidence in the record.[77]  "This standard is extremely tolerant and is satisfied if there is *any* evidence in the record that supports the disciplinary ruling."[78]  "Nevertheless . . . the 'some evidence' standard requires some reliable evidence."[79]  "[N]either [the Second Circuit] nor the Supreme Court has clearly defined standards for determining what constitutes 'some evidence' in the context of prison disciplinary hearings; rather, decisions have addressed the problem piecemeal, focusing on the discrete problems raised by the facts of particular cases."[80]  This Court notes that under New York law, prison disciplinary rulings must be supported by evidence "sufficiently relevant and probative . . . to constitute substantial evidence."[81]  This is a stricter standard than the federal

---

[76] Docket No. 11-15, pp. 121-123 (oral statement on the record); *see* Docket No. 11-13, p. 5 disposition).

[77] *Hill*, 472 U.S. at 454.

[78] *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks and citation omitted).

[79] *Id.* (internal quotation marks and citations omitted).

[80] *Id.* at 81.

[81] *Foster v. Coughlin*, 565 N.E.2d 477, 478 (N.Y. 1990) (internal quotation marks and citation omitted).

constitutional "some evidence" standard.[82]  Because the *Hill* "some evidence" standard is a broad

standard, a state court has even more latitude to reasonably determine that a prisoner has not

satisfied that standard.[83]

*Sexual Act Charge*.  Clyde contends that the only evidence supporting the attempt to

commit a sexual act charge was the testimony of Ms. Westerveldt that, in her opinion, the

individual who attacked her was trying to rape her.  Clyde points to the lack of any evidence that

he either spoke to or touched Ms. Westerveldt in a sexually suggestive way, *i.e.*, by fondling,

groping, squeezing, pinching, or kissing her.  Clyde also complains that he was not permitted to

cross-examine Ms. Westerveldt on the basis for her subjective fear of sexual assault.  Taken in

their totality, it is not irrational to infer from the nature and extent of the attack, as well the sex of

the victim, that Clyde was attempting to force Ms. Westerveldt to engage in a sexual act.

*Being Out of Place/Leaving an Assigned Area*.  Clyde contends that there is no evidence

of where he was assigned to be in order to be considered as "being out of place" or "leaving his

assigned area."  This contention is utterly without merit.  There was evidence in the record that

Clyde was in an area in which he was not supposed to be.[84]  It strains credulity far beyond the

breaking point to infer that Clyde could possibly be in an area he was not supposed to be without

leaving the area he was assigned.

---

[82] *Sira*, 380 F.3d 76 n.9.

[83] *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

[84] Docket No. 11-14, p. 2.

*Weapons Charge*.  Clyde argues that there is no evidence of what weapon he possessed or where he possessed a weapon.  Rule 113.10, which prohibits the possession of a weapon or dangerous instrument, defines "weapon" as "any  instrument, article or substance which, under the  circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of  causing bodily harm."[85]  In this case, as Respondent notes, the evidence showed that Clyde stuffed a towel down the victim's throat until she nearly passed out and shoved it back down her throat when she tried to spit it out.[86]  Thus, it is entirely logical to infer under those circumstances that the towel was being used as a dangerous instrument or weapon at the time.

*Contraband Charge*.  Clyde contends that the contraband, of which he was allegedly in possession, is unidentified.  Respondent has not responded to this contention.  This Court's review of the record indicates that while there is reference to "contraband" in several places in the record, this Court was not able to find any place where the contraband was identified.  There is reference to a "contraband receipt" as being attached to a "To/From" Inter-Departmental Communication, but the receipt itself is not attached to the copy in the record.[87]  In his second request for documents, Clyde requested the inventory of personal property taken from his cell, but specifically stated he did not request "a list of contraband."[88]

Although not directly applicable to this case, this Court looks to the *Jackson*[89] constitutional sufficiency of the evidence standard, and the cases applying it, for guidance in

---

[85] 7 N.Y. Comp. Codes R. & Regs, § 272.2[B](14)(i).

[86] Docket No. 11-15, p. 104 (testimony of V. Westerveldt).

[87] Docket No. 11-2, p. 2.

[88] Docket No. 11-5, p. 20.

[89] *Jackson v. Virginia*, 443 U.S. 307 (1979).

determining the sufficiency of the evidence under the "some evidence" standard established by *Hill*. Clyde's argument focuses on what evidence was not introduced. Clyde misperceives the role of a federal court in a habeas proceeding challenging a state prison disciplinary action. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[90] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the disciplinary rule as set forth in state law.[91] This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.[92] The sole issue before this Court is whether there is "some evidence" to support the disciplinary action taken. In this case, the evidence relied upon by the hearing officer was clearly sufficient to preclude a finding that the hearing officer's determination was arbitrary or capricious.[93] Clyde bears the burden of establishing by clear and convincing evidence that the factual findings of the hearing officer were erroneous;[94] a burden Clyde has failed to shoulder. Here, the Appellate Division, a state court, applying the stricter New York standard, found that there was sufficient evidence to support a violation of the rules promulgated by the responsible state agency. A federal court must accept

---

[90] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[91] *Jackson*, 443 U.S. at 324 n.16.

[92] *Hill*, 472 U.S. at 455-56.

[93] *See id.* at 454.

[94] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. at 340.

that state courts correctly applied state laws.[95]  Thus, it cannot be said on the record before this

Court that the disciplinary action taken in this case was not supported by "some evidence."

Even if the attempted sexual act and contraband charges were not supported by some

evidence, the disciplinary action is nonetheless supported by some evidence.  Clyde has not

challenged the sufficiency of the evidence to support either of the two charges of assaulting staff,

or the charges of violent conduct, physical interference, and making threats.  Given the

undisputed evidence concerning the severity of the attack on Ms. Westerveldt and the attack on

Mr. Rebich, there was more than sufficient evidence to support taking disciplinary action against

Clyde in this case.

Granting Clyde relief is further complicated by the fact that the hearing officer imposed

an aggregate penalty without specifying a specific penalty for any particular charge of which

Clyde was found guilty.  In imposing the penalty, the hearing officer stated on the record:

> The penalty imposed is SHU 12 years starting 7/7/06 release 7/17/2018, 12 years
> loss of package, commissary, phone starting 8/2/06 release 8/2/2018, and 12 years
> recommend loss of good time.  The reasons for disposition abducting a female in
> an isolated area, punching her putting an object in their mouth tying her up while
> you have her force face down and threatening to kill her constitutes one of the
> worst forms of misbehavior in a facility, because of the injury you have caused to
> this women in the extremely violent nature of this conduct, and because this is
> your second sex offense violation and a lesser disposition hasn't deterred you in
> any way and because of the violent conduct of punching A. Rebich in the face,
> this longer disposition is given to emphasize to you and others this conduct does

---

[95] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-
68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application
of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court
knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S.
584 (2002).

not and will not be tolerated and to encourage you to refrain from this behavior in the future.[96]

It cannot be said that the decision of the Appellate Division "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was [it] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[97]   On the basis of the record before it, this Court cannot find that Clyde's conviction of a violation of the New York prison rules and the resulting penalty imposed constituted a fundamental miscarriage of justice.  Clyde is not entitled to habeas relief under his second ground.

**C.  Construing as Civil Rights Case**.

To the extent that Clyde is challenging his SHU confinement, it is, as noted above, properly addressed in a civil rights case under 42 U.S.C. § 1983.  Although it may be permissible for this Court to bifurcate this case and address it in part as a habeas petition and in part as a civil rights complaint,[98] it need not reach the potential § 1983 civil rights issue.  Under the facts in this case, all possible defendants would be entitled to qualified immunity under § 1983.[99]

---

[96] Docket No. 11-15, p. 123 (oral statement on the record); *see* Docket No. 11-13, pp. 4-5 (written disposition).

[97] 28 U.S.C. § 2254(d).

[98] *See Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008) (suggesting that it may be appropriate to join a habeas petition under § 2254 with a civil rights action under § 1983 in the same pleading).

[99] *See Sira*, 380 F.3d at 81.

## V.  CONCLUSION AND ORDER

Clyde is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[100]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  April 13, 2010.

_/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge

---

[100] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).